STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert S. ROBINSON, Defendant-Appellant.

Supreme Court

*No. 00–2435–CR. Oral argument December 3, 2001.—Decided January 29, 2002.*

2002 WI 9

(Also reported in 638 N.W.2d 564.)

For the defendant-appellant there were briefs by *Leonard D. Kachinsky* and *Kachinsky & Petit Law Offices,* Neenah, and oral argument by *Leonard D. Kachinsky.*

For the plaintiff-respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This appeal from a judgment of conviction and an order of the circuit court comes to this court upon certification by the court of appeals pursuant to Wis. Stat. (Rule) § 809.61 (1999–2000).[1] The Circuit Court for Winnebago County, Bruce K. Schmidt, Judge, entered a judgment of conviction on two counts of recklessly endangering safety and an order denying a postconviction motion by the defendant Robert S. Robinson. The defendant had sought to set aside one of the two counts to which he had pled no contest pursuant to a negotiated plea agreement. The defendant's postconviction motion claimed that the two counts were

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

multiplicitous, violating his state and federal constitutional guarantees against double jeopardy.[2] The defendant appealed the judgment of conviction and the order denying his post-conviction motion.

¶ 2. The question of law raised on appeal is what is the appropriate remedy when an accused is convicted on the basis of a negotiated plea agreement and the counts later are determined to be multiplicitous, violating the accused's state and federal constitutional guarantees against double jeopardy? This court determines this question of law independently of the circuit court but benefiting from its analysis.

¶ 3. We conclude that when an accused successfully challenges a plea to and conviction on one count of a two-count information on grounds of double jeopardy and the information has been amended pursuant to a negotiated plea agreement by which the State made charging concessions, ordinarily the remedy is to reverse the convictions and sentences, vacate the plea agreement, and reinstate the original information so that the parties are restored to their positions prior to the negotiated plea agreement. We further conclude, however, that under some circumstances this remedy might not be appropriate. A court should, therefore, examine the remedies available and adopt one that fits the circumstances of the case after considering both the defendant's and the State's interests. Under the circumstances of the present case, we reverse the judgment of

---

[2] The Fifth Amendment to the U.S. Constitution states that "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." Article I, Section 8 of the Wisconsin Constitution states that "no person for the same offense may be put twice in jeopardy of punishment."

558

conviction and the order of the circuit court and remand the cause to the circuit court with directions to reinstate the original information against the defendant and to conduct further proceedings not inconsistent with this decision.

I

¶ 4. The facts of this case are undisputed for purposes of this appeal. On May 19, 1999, the defendant struck Norman Elsinger, who was attempting to break up a barroom fight.[3] The victim suffered a severe brain injury and required hospitalization.

¶ 5. A complaint was filed on June 25, 1999, charging the defendant with one count of aggravated battery as a party to the crime in violation of Wis. Stat. § 940.19(5) (a class C felony) and one count of recklessly endangering safety as a party to the crime in violation of § 941.30(1) (a class D felony). The complaint alleged that the defendant was a repeat offender under § 939.62(1)(b). The State subsequently filed an information containing the same charges as those in the complaint.

¶ 6. The State and the defendant entered into a negotiated plea agreement. Under the agreement, the State amended the information to reduce the original count of aggravated battery to one count of recklessly endangering safety, to retain the original count of recklessly endangering safety, and to eliminate the repeat offender allegations. The amended information reduced the defendant's exposure from 27 years in state prison to ten years. In addition, the State agreed to recommend an imposed and stayed two-year prison

---

[3] The parties dispute whether the defendant struck the victim with his fist or stomped on the victim's head with his feet.

sentence, probation, eight months in jail as a condition of probation, and restitution.

¶ 7. In exchange for the State's concessions, the defendant agreed to enter pleas of no contest to the two counts of recklessly endangering safety as a party to the crime.[4]

¶ 8. The defendant filed a signed Plea Questionnaire/Waiver of Rights form with the circuit court. The circuit court engaged the defendant in a colloquy regarding the plea agreement, accepted the defendant's pleas, and ordered a presentence investigation. On March 16, 2000, the circuit court sentenced the defendant to five years in prison on each count of recklessly endangering safety, the sentences to be served consecutively.

¶ 9. On July 19, 2000, the defendant filed a post-conviction motion for relief, alleging that the two counts of recklessly endangering safety were identical in both fact and law and that the defendant's convictions on the two counts violated the double jeopardy clauses of the state and federal constitutions. The defendant requested that the circuit court vacate his conviction and sentence on one of the two counts of recklessly endangering safety and leave standing the conviction and sentence on the other count. The effect of granting the defendant's motion would be to subject the defendant to a single five-year sentence in prison for one count of recklessly endangering safety.

---

[4] When a no-contest plea in a criminal matter is accepted by the circuit court, the plea "constitutes an implied confession of guilt for the purposes of the case to support a judgment of conviction and in that respect is equivalent to a plea of guilty." *Lee v. Wisconsin State Board of Dental Examiners,* 29 Wis. 2d 330, 334, 139 N.W.2d 61 (1966). *See also State v. Suick,* 195 Wis. 175, 217 N.W. 743 (1928).

¶ 10. The circuit court denied the defendant's motion, ruling that the defendant had waived his right to challenge his convictions and the plea agreement, even on constitutional grounds, because he entered a knowing and voluntary plea to both counts of recklessly endangering safety, had been represented by counsel throughout the proceedings, had engaged in a colloquy with the circuit court, and had signed the Plea Questionnaire/Waiver of Rights form. The defendant appealed the judgment of conviction and the order denying the post-conviction motion, and this court accepted certification of the appeal.

## II

¶ 11. The parties agree on two propositions of law that are not briefed or argued before this court on this appeal. Therefore, we do not address these issues, but set them forth to put this appeal in context.

¶ 12. First, the parties agree that on the facts of the present case the amended information to which the defendant pled no contest pursuant to the negotiated plea agreement was multiplicitous and violated the double jeopardy provisions of both the state and federal constitutions. The double jeopardy violation did not arise from the original complaint or information, but rather from the negotiated plea agreement that contained two identical counts of recklessly endangering safety for the same criminal conduct.

■

¶ 13. Second, the parties agree that the defendant's plea of no contest did not waive the defendant's right to bring a post-conviction motion to challenge his conviction on double jeopardy grounds. The parties agree that a simple entry of a guilty plea

561

does not waive the constitutional defect of double jeopardy.[5] An express waiver of a double jeopardy claim in a plea agreement is needed for a waiver of a double jeopardy claim.[6]

¶ 14.  The parties agree that the defendant did not expressly waive his double jeopardy claim and, therefore, his no-contest plea and conviction on the two counts of recklessly endangering safety did not waive his double jeopardy claim in the present case.

### III

¶ 15.  The parties disagree about one issue of law—the remedy in the present case. They correctly point out that there is no direct precedent in Wisconsin regarding the appropriate remedy when an accused is convicted on the basis of a negotiated plea agreement and the counts in the agreement and conviction are later determined to be multiplicitous, violating the accused's state and federal constitutional guarantees against double jeopardy.

¶ 16.  The parties' disagreement about the appropriate remedy in the present case stems from their disagreement about the proper characterization of the present case.

¶ 17.  The defendant focuses on the constitutional infirmity of the judgment of conviction. He characterizes the present case as one in which the amended information and resulting judgment of conviction in-

---

[5] The State cites *United States v. Broce,* 488 U.S. 563, 575 (1989); *Menna v. New York,* 423 U.S. 61, 62 n.2 (1975); *State v. Morris,* 108 Wis. 2d 282, 284 n.2, 322 N.W.2d 264 (1982); and *State v. Hubbard,* 206 Wis. 2d 651, 656, 558 N.W.2d 126 (Ct. App. 1996).

[6] *State v. Hubbard,* 206 Wis. 2d at 657.

562

clude a constitutionally invalid count, rendering void the conviction and sentence on that count. According to the defendant, the other count is valid, and the conviction on that count should stand, leaving intact a five-year sentence.

¶ 18. In contrast, the State focuses on the defendant's repudiation of the negotiated plea agreement. The State compares the present case to those in which a plea agreement has been breached.

¶ 19. Numerous cases have stated that when the breach of a plea agreement is material and substantial,[7] a plea agreement may be vacated or an accused may be entitled to resentencing.[8] These cases demonstrate that the remedy for a breach of a plea agreement depends on the nature of the breach and the totality of the circumstances.

¶ 20. The defendant's repudiation of the plea agreement is a substantial and material breach of the plea agreement because it deprives the State of the benefit for which it bargained, namely, the defendant's conviction on two counts of recklessly endangering safety that exposes the defendant to a maximum sen-

---

[7] *See, e.g., State ex rel. Warren v. Schwarz,* 219 Wis. 2d 615, 643, 579 N.W.2d 698 (1998); *State v. Smith,* 207 Wis. 2d 258, 272, 558 N.W.2d 379 (1997); *State v. Bangert,* 131 Wis. 2d 246, 289–90, 389 N.W.2d 12 (1986). A material and substantial breach is a violation of the terms of the agreement that defeats the benefit for which a party bargained. *State v. Bangert,* 131 Wis. 2d at 289–90.

[8] *State v. Smith,* 207 Wis. 2d at 272, 281–82; *State v. Bangert,* 131 Wis. 2d at 289–90; *State v. Rivest,* 106 Wis. 2d 406, 414, 216 N.W.2d 395 (1982); *State v. Jorgensen,* 137 Wis. 2d 163, 168, 404 N.W.2d 66 (Ct. App. 1987).

tence of ten years in prison. The State argues that because the defendant is reneging on the plea agreement, the plea agreement should be vacated. The State urges that the remedy in the present case is to reverse the conviction, vacate the plea agreement, reinstate the original information, and restore the parties to their positions before the execution of the invalid plea agreement. According to the State, resentencing would not be a meaningful remedy in the present case because the circuit court has already imposed the maximum five-year penalty on the remaining "valid" felony count of recklessly endangering safety. The State contends that allowing one of the five-year sentences to stand negates the essence of the State's and defendant's negotiated plea agreement that the defendant would be exposed to a maximum sentence under the plea agreement of ten years.

¶ 21.   The defendant and the State rely on different cases to support their respective positions about the appropriate remedy in the present case.

¶ 22.   The defendant relies on *State v. Benzel,* 220 Wis. 2d 588, 583 N.W.2d 434 (Ct. App. 1998), in which the accused pled no contest to one count of possession of marijuana with intent to deliver and one count of possession of drugs without a tax stamp. No plea agreement was involved in *Benzel.*

¶ 23.   After Benzel's conviction, the supreme court declared the tax stamp statute unconstitutional,[9] and Benzel challenged his conviction on the tax stamp count. The issue before the court of appeals was whether the declaration of unconstitutionality of the tax stamp statute applied retroactively. The court of appeals ruled that it did apply retroactively, that the

---

[9] *See State v. Hall,* 207 Wis. 2d 54, 557 N.W.2d 778 (1997).

circuit court had no subject matter jurisdiction over the tax stamp count, and that the count in the information was void from the beginning because it charged the accused with an offense that was not recognized in law. The *Benzel* court remanded the cause to the circuit court with instructions to vacate the conviction on the tax stamp count; the conviction on the other count remained intact.

¶ 24.  We disagree with the defendant that *Benzel* supports the remedy of vacating one of the counts of recklessly endangering safety in the present case. In *Benzel,* the tax stamp count was unconstitutional. Re-instituting the original information against the accused in *Benzel* would not have changed the fact that one of the counts in the original information was unconstitutional. Under no circumstances could the State try *Benzel* under the void count. The only remedy available in *Benzel* was to vacate the tax stamp conviction and leave intact the remaining conviction for possession of marijuana with intent to deliver.[10]

¶ 25.  We agree with the State that *Benzel* is not analogous to the present case. *Benzel* involved an unconstitutional count in both the original information and in the judgment of conviction. *Benzel* was not a breach of plea agreement case. The original information in *Benzel* could not be reinstated. No one asserts that the original information in the present case contains an unconstitutional or otherwise invalid count or that it cannot be lawfully reinstated.

¶ 26.  The defendant also relies on cases from other jurisdictions to support his position that the

---

[10] The *Benzel* court apparently did not consider remanding the case for resentencing on the marijuana charge. *State v. Benzel,* 220 Wis. 2d 588, 583 N.W.2d 434 (Ct. App. 1998).

proper remedy for a conviction based on multiplicitous counts in a plea agreement is to set aside the conviction and sentence on the invalid count.

¶ 27. The defendant argues that *Jordan v. State,* 676 N.E.2d 352 (Ind. Ct. App. 1997), is persuasive authority for his position. In *Jordan* the Indiana court of appeals vacated one of two multiplicitous counts that resulted from a plea agreement and allowed the conviction and sentence on the other count to stand.

¶ 28. Jordan pled guilty to both a felony murder count and a robbery count. Because the robbery count was the underlying felony to support the felony murder count, the Indiana court of appeals held that the conviction and sentence for both counts violated the constitutional prohibition against double jeopardy. The *Jordan* court acknowledged that a variety of remedies had been imposed in analogous cases. One remedy was to vacate the plea agreement and allow the State to reprosecute the accused on the original charges. Another remedy was to vacate only certain convictions and sentences and resentence the accused on the remaining valid convictions.

¶ 29. Because Jordan had neither alleged nor proved that he would not have entered the plea agreement had he been properly advised of the principles of double jeopardy, and because he neither asserted nor proved that his guilty plea was involuntary or unintelligent, the Indiana court of appeals concluded that it did not have to vacate the plea agreement and did not have to reinstate the original charges.

¶ 30. Instead, the Indiana court of appeals vacated the robbery conviction and sentence and allowed the felony murder conviction and sentence to stand. Although the effect of the court of appeals' decision was to reduce a 110–year sentence to a 60–year sentence so

566

that the State did not get the full benefit of its plea agreement, the Indiana court of appeals believed that it had taken the wisest path. The court of appeals wrote that its remedy was "the wisest in that it forecloses the possibility that Jordan will be set free in the event the State does not have sufficient evidence to reprosecute a ten year old murder case."[11] The remedy was the best one under the circumstances to avoid a violation of the accused's constitutional guarantee against double jeopardy and at the same time protect the public interest in incarcerating a murderer.

██

¶ 31.  The *Jordan* decision does not persuade us that vacating one of the multiplicitous counts in the present case is the proper remedy. Rather, we view the *Jordan* case as persuasive authority for our conclusion in the present case about the appropriate remedy. We conclude that when an accused successfully challenges a plea to and conviction on one count of a two-count information on grounds of double jeopardy and the information has been amended pursuant to a negotiated plea agreement by which the State made charging concessions, ordinarily the remedy is to reverse the convictions and sentences, vacate the plea agreement, and reinstate the original information so that the parties are restored to their positions before the negotiated plea agreement. *Jordan* supports our conclusion that under some circumstances the latter remedy might not be appropriate. We agree with the *Jordan* decision that a court should examine the available remedies and adopt the one that fits the circumstances of the case, considering both the defendant's and the State's interests.

---

[11] *Jordan v. State*, 676 N.E.2d 352, 355 (Ind. Ct. App. 1997).

¶ 32. Although the present case and *Jordan* similarly involve multiplicitous counts and negotiated plea agreements, the record in the present case does not point to any circumstances that are likely to prevent the State from trying the defendant under the original information or to prevent the defendant from defending himself. Therefore, we view the *Jordan* decision as persuasive authority for our conclusion about the remedy, not for the defendant's position about the remedy.

¶ 33. The defendant also relies on *Burke v. State*[12] to support his position that the appropriate remedy in the present case is to vacate one of the multiplicitous counts of recklessly endangering safety. In *Burke,* the accused was charged with both reckless aggravated assault and intoxication assault and pled guilty to both counts. A jury found the accused guilty of both offenses and assessed his punishment at 15 years' and ten years' confinement, respectively. The trial court ordered the sentences to run concurrently. The accused appealed, arguing that the convictions violated the accused's constitutional guarantee against double jeopardy.

¶ 34. The Texas court of appeals ultimately held that the proper remedy for the double jeopardy violation in that case was to apply the "most serious punishment" test, which requires retaining the offense with the most serious punishment and vacating any remaining offenses that are the "same" for double jeopardy purposes.[13] Thus, the Texas court of appeals vacated the conviction for the lesser charge of intoxication

---

[12] The *Burke* case has been before the Texas appellate courts a number of times. *See Burke v. State,* 6 S.W.3d 312 (Tex. Ct. App. 1999); *Burke v. State,* 28 S.W.3d 545 (Tex. Crim. App. 1997); *Burke v. State,* No. 2–98–185–CR, 2001 WL 1340583, at *11, ___ S.W.3d ___ (Tex. Ct. App. Nov. 1, 2001).

[13] *Burke,* No. 2–98–185–CR, 2001 WL 1340583, at *3.

assault on double jeopardy grounds and retained the conviction for the more serious charge of reckless aggravated assault.

¶ 35.   The *Burke* court of appeals also determined, however, that the accused's guilty plea to reckless aggravated assault was involuntary, as the accused had claimed. Therefore, the court of appeals reversed the judgment of conviction on that count, set aside the guilty plea to that count, and remanded the cause for a new trial.[14]

¶ 36.   The *Burke* case is not convincing support for the defendant's position that the proper remedy in the present case is to vacate one of the multiplicitous convictions. Although a guilty plea case, *Burke* did not involve either a negotiated plea agreement or an amended information. Thus *Burke* is not sufficiently analogous to the present case to convince us that vacating one of the multiplicitous counts is the proper remedy in the present case.

¶ 37.   The defendant ultimately bases his remedy on concepts of fairness. The defendant argues that the remedy he proposes for his multiplicitous convictions is fair because it enables the defendant to bring constitutional violations to the court's attention. The defendant argues that an accused should not be placed in risk of increased punishment by the reinstatement of the original information after he has successfully challenged the unconstitutionality of a conviction.

██

¶ 38.   The defendant makes a good point. Our cases recognize that "the defendant's constitutional and statutory rights to challenge a conviction or sentence should not be 'chilled' by the threat of increased pun-

[14] *Id.,* at *11, *13.

ishment."[15] Nevertheless, the cases also recognize that when one conviction and sentence is vacated on double jeopardy grounds, the validity of the sentence on the other conviction is implicated, resentencing on the valid conviction is permissible, and the circuit court may increase the sentence on the valid conviction.[16] Thus, although the defendant correctly reminds us that he ought not to be punished for exercising his constitutional rights, the cases do not proscribe every increase in a sentence when a defendant challenges his conviction on constitutional grounds.[17]

¶ 39.   Relying on different cases from those cited by the defendant, the State argues that the convictions

[15] *State v. Martin,* 121 Wis. 2d 670, 682, 360 N.W.2d 43 (1985).

[16] *Id.,* 121 Wis. 2d at 681.

[17] For example, when a trial court sentences on two convictions, one sentence being invalid, resentencing may be appropriate on the valid conviction when the maximum sentence was not imposed because the trial court's sentence on the valid conviction may have taken into account the sentence on the invalid conviction. *Ronzani v. State,* 24 Wis. 2d 512, 520, 129 N.W.2d 143 (1964).

In the present case, resentencing on the valid count is not a viable option because the circuit court in the present case has already imposed the maximum sentence on the valid count. Neither the defendant nor the State suggests resentencing.

Indeed the defendant argues that the State still gets more than it expected under the plea agreement because the five-year sentence on the one valid count is well in excess of the imposed and stayed probationary disposition recommended by the State at the sentencing hearing. This argument ignores the law that the circuit court, not the State, determines the sentence. The circuit court is not bound by the State's recommendation in determining the sentence. *Young v. State,* 49 Wis. 2d 361, 367, 182 N.W.2d 262 (1971).

in the present case should be reversed, the negotiated plea agreement vacated, and the original information reinstated. According to the State, the defendant is now reneging on a negotiated plea agreement by challenging the constitutionality of his plea and conviction on one of the two counts. The defendant should not benefit, urges the State, from the State's concessions in the negotiated plea agreement when the defendant is reneging on his promise in the negotiated plea agreement to be convicted on two offenses with a maximum penalty of ten years in prison. According to the State, reversing a conviction on one of the multiplicitous counts gives the defendant the benefit of reducing his maximum sentence from ten years in prison to five years, contrary to the plea agreement.

¶ 40. The State relies on *State v. Pohlhammer,* 78 Wis. 2d 516, 519, 254 N.W.2d 478 (1977), *on rehearing* 82 Wis. 2d 1, 260 N.W.2d 678 (1978), in which the accused was charged with three counts of arson with intent to defraud the insurer. Pursuant to a negotiated plea agreement, the State filed an amended information of one count of theft by fraud to which the accused pled guilty. After sentencing, the accused sought to withdraw his plea of guilty on the ground that the statute of limitations had expired on the theft by fraud charge and that the amended information was defective.

¶ 41. The *Pohlhammer* court concluded that the filing of the amended information was barred by the statute of limitations and that neither the amended information nor the plea thereto should have been accepted. The court permitted the accused to withdraw his plea and set aside the judgment of conviction, permitted the State to withdraw the amended information, and remanded the cause to the trial court for further proceedings on the original information. The

court reasoned that the amended information was "conditioned" on the accused's "agreement to plead guilty" and that "[i]nvalidating the plea invalidates the plea bargain."[18]

¶ 42. The State also relies on *State v. Briggs,* 218 Wis. 2d 61, 64, 579 N.W.2d 783 (Ct. App. 1998), in which the accused entered a negotiated plea agreement with the State, resulting in an amended information that charged the accused with attempted felony murder and armed burglary.[19] The circuit court sentenced the accused to 30 years in prison on the attempted felony murder charge and 40 years in prison on the armed burglary charge, the sentences to be served consecutively.

¶ 43. The accused then challenged his conviction for attempted felony murder because this offense was not a crime under Wisconsin's statutory or common law. The *Briggs* court agreed with the accused that he had been convicted of a crime that did not exist under Wisconsin law.

¶ 44. The accused argued in *Briggs* that the appropriate relief was to vacate the conviction for attempted felony murder and leave the conviction and sentence for armed burglary intact. The State argued in

[18] *State v. Pohlhammer,* 78 Wis. 2d 516, 524, 254 N.W.2d 478 (1977). The disposition in *Pohlhammer* was reaffirmed on rehearing in *State v. Pohlhammer,* 82 Wis. 2d 1, 4, 260 N.W.2d 678 (1978).

[19] The original information in *State v. Briggs,* 218 Wis. 2d 61, 64, 579 N.W.2d 783 (Ct. App. 1998), charged the accused with attempted first-degree intentional homicide, armed car theft, armed robbery, armed burglary, and criminal damage to property.

*Briggs* that the convictions based on the plea agreement should be vacated and the original information reinstated.

¶ 45. Relying on the reasoning in the *Pohlhammer* case, the *Briggs* court set aside both convictions and the plea agreement because "all are connected and all were the result of an erroneous view of the law."[20] The *Briggs* court then vacated the amended information and reinstated the original information in order to restore the parties to their positions prior to the negotiated plea agreement that was based on an inaccurate view of the law. The cause was remanded for proceedings on the counts contained in the original information.

¶ 46. We agree with the State that *Briggs* and *Pohlhammer* are analogous to the present case and that they suggest the proper remedy in the present case. The *Jordan* case also gives us insight about remedies.

¶ 47. We agree with the State that the defendant's motion to vacate a conviction on one count and withdraw his plea of no contest to one of the two counts of the amended information constitutes a repudiation of the plea agreement. The agreement was that the defendant would plead no contest to two counts of recklessly endangering safety with a maximum possible sentence of ten years in prison in return for the State reducing one charge, dropping the repeat offender allegations, and recommending a sentence that was less than the possible maximum sentence. When the defendant was successful in withdrawing his no-contest plea to one of the counts of recklessly endangering safety, the basis on which the State had entered the plea agreement was substantially changed.

___

[20] *Id.,* 218 Wis. 2d at 73.

¶ 48. We conclude that the appropriate remedy in such circumstances ordinarily is to reverse the conviction, vacate the negotiated plea agreement upon which the conviction was based, set aside the amended information, and reinstate the original charges against the accused. But the appropriate remedy depends on the totality of the circumstances. A court must examine all of the circumstances of a case to determine an appropriate remedy for that case, considering both the defendant's and State's interests.

¶ 49. In the present case, examining all the circumstances, the available remedies, and the State's and defendant's interests, we conclude that the parties should be restored to the same positions they respectively held before the defective plea agreement was entered. No claim is made by the parties and nothing appears in the record that this remedy adversely affects the State's ability to prosecute or the defendant's ability to defend against the counts set forth in the original information. Furthermore, the defendant has not made a persuasive argument that this remedy is fundamentally unfair because it exposes him to the risk of a greater sentence.

¶ 50. Our conclusion about the remedy based on *Pohlhammer*,[21] *Briggs*,[22] and *Jordan*[23] is also supported by principles of contract law. Plea agreements have been compared to contracts, although the analogy is not precise.[24]

---

[21] *State v. Pohlhammer,* 78 Wis. 2d 516.

[22] *State v. Briggs,* 218 Wis. 2d 61.

[23] *Jordan v. State,* 676 N.E.2d 352.

[24] "[W]e also look to contract law principles to determine a criminal defendant's rights [under plea agreements] . . . [T]he

¶ 51. Our conclusion about the appropriate remedy in the present case is congruent with the principle of contract law that recognizes several remedies are available for breaches of contracts to protect the various interests of the contracting parties under the circumstances of a case.[25] One contract remedy is to place the parties back in the positions they would have held if the contract had not been made. This remedy is used when a party to a contract changes its position in reliance on the promise of another party to the contract. The remedy protects a party's reliance interest in the contract.[26]

---

analogy of plea agreements to private contracts is not precise. The constitutional concerns undergirding a defendant's 'contract rights' in a plea agreement demand broader and more vigorous protection than those accorded private contractual commitments." *State v. Scott,* 230 Wis. 2d 643, 654–55, 602 N.W.2d 296 (Ct. App. 1999).

[25] "Availability of particular remedies depends much on the facts of the case." Dan B. Dobbs, *Dobbs Law of Remedies* § 1.1 at 3 (2d ed. 1993).

[26] *Restatement (Second) of Contracts* § 344(b) (1981). The other interests protected are the expectation interest of the promisee in having the benefit of the bargain by being put in as good a position as he or she would have been in had the contract been performed and the restitution interest of the promisee in having restored to him or her any benefit that was conferred on the other party. *Restatement (Second) of Contracts* § 344(a) and (c) (1981). *See Harris v. Metropolitan Mall,* 112 Wis. 2d 487, 496–97, 334 N.W.2d 519 (1983) (citing *Restatement (Second) of Contracts* § 344 (1981)); *Thorpe Sales Corp. v. Gyuro Grading Co., Inc.,* 111 Wis. 2d 431, 438, 331 N.W.2d 342 (1983) (same); *Reimer v. Badger Wholesale Co., Inc.,* 147 Wis. 2d 389, 395, 433 N.W.2d 592 (1988) (same).

¶ 52.  In the present case the State changed its position by filing an amended information in reliance on the defendant's promise to plead no contest. When the defendant repudiated his plea to one of the counts upon which he was convicted, the State sought to be placed in the position it would have held if the plea agreement had not been made. This remedy would serve to protect the State's reliance interest in the plea agreement and consequently comports with the relevant principles of contract law.

¶ 53.  An alternative principle of contract law also supports our conclusion about the appropriate remedy in the present case. Both parties in the present case apparently believed that the terms of the plea agreement were constitutional, even though they were not. Both the State and defendant were thus acting under a mistake of law in negotiating the plea agreement, and this mistake had a material effect on the agreement by relieving the defendant of a substantial part of his performance and adversely affecting the State's prosecution of the case.

¶ 54.  The general rule is that when both parties are mistaken about a basic assumption on which a contract was made and the mistake has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party.[27]

¶ 55.  If we adhere to contract law doctrines about remedies for breach of contract and mistakes, the plea agreement in the present case should be voided at the request of the State, which is the adversely affected

[27] *Restatement (Second) of Contracts* § 152(1) (1981).

party, and the parties restored to their respective positions before the plea agreement was entered.

## IV

¶ 56. Because we agree with the State's proposed remedy, we need not and do not address the State's claim that the doctrine of judicial estoppel bars the defendant in the present case from claiming a benefit from the double jeopardy violation created by the plea agreement.

¶ 57. In summary, we conclude that when the defendant repudiated the negotiated plea agreement on the ground that it contained multiplicitous counts, the defendant materially and substantially breached the plea agreement. We further conclude that when an accused successfully challenges a plea to and a conviction on one count of a two-count information on grounds of double jeopardy and the information has been amended pursuant to a negotiated plea agreement by which the State made charging concessions, ordinarily the remedy is to reverse the convictions and sentences, to vacate the plea agreement, and to reinstate the original information so that the parties are restored to their positions prior to the negotiated plea agreement. We also conclude, however, that under some circumstances this remedy might not be appropriate.

¶ 58. In the present case, we reverse the judgment of conviction, vacate the plea agreement, and remand the cause to the circuit court with directions to reinstate the original information against the defendant and to conduct such other proceedings that are not inconsistent with this opinion.

*By the Court.*—The judgment of conviction and the order of the circuit court are reversed and the cause is remanded.